AHERN et al., Appellees,

v.

AMERITECH CORPORATION et al., Appellants.■

[Cite as *Ahern v. Ameritech Corp.* (2000), 137 Ohio App.3d 754.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 75807, 75808 and 75809.

Decided May 22, 2000.

755

756

758

*Davis & Young* and *Patrick F. Roche,* for appellees.

*Thomas A. Linton,* for appellants Ameritech Services, Inc. and Ameritech Corporation.

*Edward Bettendorf,* for appellant Barbara Gerald.

SPELLACY, Judge.

This is a consolidated appeal of appellate case numbers 75807, 75808, and 75809. Defendants-appellants Ameritech Corporation, Ameritech Services Incorporated, and Barbara Gerald appeal from the jury verdict entered in favor of plaintiffs-appellants Bryan and Kathleen Ahern. The Aherns prevailed below on their claims of age discrimination, loss of consortium, the value of stock options, and punitive damages. The trial court also awarded prejudgment interest.

## I

On February 15, 1965, Bryan Ahern began working for Ohio Bell as a lineman. Ahern held a variety of positions with Ohio Bell and its successor Ameritech Corporation in the succeeding years. In 1994, Frank Jenuleson, a general manager with Ameritech Pay Phone Services interviewed Ahern for a position. Ameritech Pay Phone Services is a division of Ameritech Services Incorporated. Ahern accepted a position as assistant manager with Ameritech Pay Phone Services. In 1995, Michael Krol, the vice-president of Ameritech Pay Phone Services, promoted Ahern to the level of director in charge of franchise development. Ahern's salary level increased from a grade five to a six. Ahern received Ameritech stock options because of his position as a director. Ahern presented the results of the project not only to Ameritech Pay Phone Services but to Ameritech Corporation as a whole.

Ahern's project involving franchise development ended in early 1996. At that time, there was a vacancy for a franchise manager in Cleveland. Ahern accepted the position. Ahern continued to be compensated at a grade six salary level although the franchise manager position was a grade level five.

Jenuleson stated that Ahern achieved excellent results while performing his duties at Ameritech Pay Phone Services, particularly in the areas of installation, maintenance, collections, and securing contracts for the company. The contracts were quite lucrative for Ameritech Pay Phone Services. Ahern put in long hours at work and always went in on Saturdays. Krol selected Ahern for the President's Club, which is reserved for the top ten percent of franchise managers. Ahern and his wife were sent on an all-expense paid trip to Palm Springs. Ahern received four quarterly president's awards. Ahern had an unblemished record with Ameritech with regard to discipline.

In spring of 1996, Barbara Gerald replaced Jenuleson as general manager, supervising Ahern. Ahern felt that the work environment changed significantly under Gerald. Jokes with inappropriate sexual content, some accompanied by gestures, were told by Ahern's fellow employees who were younger than Ahern. Most of the jocularity took place at after-hour dinners and other gatherings.

Ahern did not join in the humor, once even slamming down his possessions before leaving the room in disgust. Gerald participated in the horseplay. Ahern also observed physical touching taking place, sometimes during meetings. The touching primarily involved neck massages, which are listed by Ameritech as an example of sexual harassment. Gerald both received and gave the massages.

In December 1995, Ameritech Pay Phone Services introduced the personal vehicle reimbursement ("PVR") policy. Prior to this, some of the employees, including Ahern, were assigned company cars. Under PVR, employees were to drive their personal cars for company business. Vehicles meeting the company's standards were to be available for the employee to use for business each work day. If the employee's personal vehicle was not available, the employee was responsible for providing an acceptable replacement. Ameritech Pay Phone Services reimbursed participants in the PVR plan by paying the employees the sum of $165 a month plus mileage. To be eligible, an employee had to drive an average of at least one thousand business miles per month. Even if driving only one mile for business purposes in a particular month, an employee would receive the money.

In September 1996, Ahern began borrowing company vehicles to use for business purposes. Ahern continued to use company automobiles and his personal vehicle until mid-December. Security would record in their logs each time Ahern drove a company vehicle out of the garage. Ameritech Pay Phone Services paid Ahern the monthly reimbursement payment of $165 during this period plus mileage when Ahern drove his personal vehicle.

Gerald became aware of Ahern's use of a company automobile in October after two employees questioned her about the situation. Gerald contacted Ameritech's corporate security regarding the matter. Security conducted an investigation and reported to Gerald that Ahern's use of the company car was a violation of Ameritech's Code of Business Conduct. Gerald discussed the situation with her supervisor, Michael Krol, who said he would concur with Gerald if she decided to terminate Ahern from his employment with Ameritech Pay Phone Services. Gerald stated that, under the Code of Business Conduct, she had the responsibility to safeguard Ameritech's assets. Gerald felt that Ahern violated the Code of Business Conduct by repeatedly driving a company vehicle while receiving compensation under the PVR plan for using his personal vehicle. Gerald was aware that a violation of the Code of Business Conduct would be reported to the Chief Executive Officer of Ameritech.

On December 13, 1996, Ahern was called into a meeting with Gerald and corporate security. The security investigators asked Ahern about his use of a company car. Ahern admitted to driving a corporate vehicle but did not understand this violated the PVR plan. No one had discussed with Ahern his use

of a company car while participating in the PVR plan before this meeting. At the end of the two-hour meeting, Ameritech Pay Phone Services terminated Ahern's employment. A corporate security investigator escorted Ahern from the building. At the time of his termination, Ahern was fifty-three years old.

On January 24, 1997, Ahern filed a complaint against Ameritech Corporation. Ahern brought causes of action for sexual harassment, age discrimination, retaliatory discharge, and breach of an agreement to grant stock options. Ahern amended his complaint to add a claim of negligence. Ahern obtained leave of court to amend his complaint a second time to add his wife, Kathleen, as a new-party plaintiff and Barbara Gerald as a new-party defendant. When Ahern filed his second amended complaint, he also added Ameritech Pay Phone Services of Ohio as a new-party defendant. Kathleen Ahern brought a claim for loss of consortium. The parties agreed to substitute Ameritech Services Incorporated for Ameritech Pay Phone Services of Ohio. The Aherns dismissed their claims against Ameritech Pay Phone Services of Ohio.

The defendants filed motions for summary judgment. The trial court granted summary judgment for Ahern's negligence claim and denied summary judgment as to the remainder of the Aherns' causes of action.

The case proceeded to trial. The trial court denied the defendant's motion for directed verdict. The jury found for Bryan Ahern on his claim of age discrimination. The jury awarded Ahern compensatory damages of $568,000 against Ameritech and $10,000 against Gerald. The jury found in Kathleen Ahern's favor for her loss-of-consortium claim against Ameritech but in Gerald's favor on the same claim. The jury awarded Kathleen Ahern $99,300 in damages. The jury returned a verdict in favor of Ameritech and Gerald on the claims of sexual harassment and retaliation for opposing sexual harassment. The jury awarded punitive damages against Ameritech for $621,000 and against Gerald for $18,000.

## II

In appellate case number 75807, Ameritech Services Incorporated raises several assignments of error, only one of which will be addressed upon appeal. Ameritech Services argues that the trial court abused its discretion by not granting its motion for summary judgment or directing a verdict in its favor because Ahern never properly added it as a party-defendant. Ameritech Services contends that Ahern did not obtain leave of court to add it to the proceedings and, therefore, Ameritech Services never was a party in the case.

The record reveals that the Aherns did not obtain leave of court to add Ameritech Services or Ameritech Pay Phone Services of Ohio as a new party-defendant. The Aherns maintain that leave of court was not required because of

an agreement between the parties. However, Civ.R. 15(A) provides that a pleading only may be amended after a responsive pleading is made by leave of court or by the written consent of the adverse party. The Aherns met neither requirement of Civ.R. 15(A) and, therefore, Ameritech Services was not properly made a party to the action. After the trial concluded, the trial court granted the Aherns' motion asking the trial court to reopen the judgment pursuant to Civ.R. 50(B) and direct an entry of judgment against Ameritech Services as being jointly and severally liable with Ameritech.

■ Civ.R. 50(B) provides in part that a party may ask the trial court to reopen a judgment and direct an entry of judgment. However, a trial court may enter a judgment only against a party to the action. Ameritech Services was not properly made a party and, therefore, the trial court could not enter a judgment against it.

■ Civ.R. 21 allows a trial court to add a party on motion of a party or on its own initiative at any stage of the proceedings. The rule is intended to bring in a party who, through mistake, inadvertence, or any other reason was not made a party and whose presence in the case is necessary or desirable. See *Bill Gates Custom Towing, Inc. v. Branch Motor Express Co.* (1981), 1 Ohio App.3d 149, 1 OBR 460, 440 N.E.2d 61. The joiner provisions of Civ.R. 21 have been liberally construed to permit a trial court to add a new party in an action at any stage of the proceedings. *Grogan Chrysler–Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 13 O.O.3d 154, 392 N.E.2d 1283. In *Craft Builders v. McCloud* (Jan. 14, 1997), Franklin App. No. 96APE05–716, unreported, 1997 WL 15133, the Tenth District Court of Appeals remanded a case to the trial court following an appeal from a bench trial to add a plaintiff to the case pursuant to Civ.R. 21.

After examining the record in the instant case, it is apparent that Ameritech Services should have been a party to the case. For various reasons, the plaintiffs failed to properly add Ameritech Services as a party-defendant in the action. Even so, Ameritech Services appeared in the action and defended itself before, during, and after trial. Ameritech Services would not be prejudiced by being added to the case, even at this late date. Appellate case number 75807 is remanded to the trial court for Ameritech Services to be added as a defendant in the case pursuant to Civ.R. 21.

## III

In appellate case number 75809, Ameritech Corporation appeals from the judgment of the trial court and raises a number of errors for review. For the reasons set forth below, the judgment of the trial court is affirmed.

"I. The trial court committed reversible error by failing to grant summary judgment in favor of this defendant and against the plaintiffs' claim of age discrimination.

"II. The trial court committed reversible error by failing to direct a verdict in favor of this defendant and against the plaintiffs on the plaintiffs' claim of age discrimination."

Ameritech's first and second assignments of error will be addressed together because Ameritech has failed to separately argue the assignments of error as required by App.R. 16(A)(7). In both assignments of error, Ameritech disputes the evidence supporting Ahern's claim of age discrimination.

■ Ameritech initially argues that the trial court should have granted summary judgment in its favor because Ahern was not an employee of Ameritech. A review of Ameritech's summary judgment motion discloses that Ameritech never asked the trial court to grant summary judgment on this issue. Ameritech's failure to raise the matter in its motion for summary judgment precludes Ameritech from raising the issue on appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 462–463. See, also, *Freightcor Serv., Inc. v. Goodyear Tire & Rubber Co.* (Sept. 8, 1992), Summit App. No. 15494, unreported, 1992 WL 224258. The trial court could hardly grant summary judgment on matter for which Ameritech never requested summary judgment.

■ Ameritech asserts that the trial court erred in not granting its motion for directed verdict dismissing it from the case because Ahern was not one of its employees. Ameritech argues that no evidence was admitted at trial showing that it had any role in the decision to terminate Ahern's employment.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ When ruling on a motion for a directed verdict, the trial court's function in a jury trial is not to weigh the evidence but to "determine whether there is any evidence of substantial probative value in support of the nonmoving party's claim." *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 166, 493 N.E.2d 293, 295. The determination to be made is not whether one set of facts is more persuasive than another but whether only one result could be reached under the theories of law presented in the complaint.

*Id.* The Civ.R. 50(A) test looks to the sufficiency of the evidence on each element of a claim to take the case to the jury. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. The general rule is that a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. Therefore, a motion for a directed verdict presents a question of law as opposed to a question of fact. *Id.*

At trial, Ameritech presented the following argument in support of its motion for directed verdict:

"First of all, Ameritech Corporation, your Honor, there has been no evidence by Ameritech Corporation in this case. All of the testimony from the plaintiffs' witnesses has been the work for Ameritech Pay Phone Services. For that reason, that reason alone, Ameritech Corporation ought to be dismissed as part of this case. It's total lack of proof."

Ameritech presented no other argument on the issue during its motion for directed verdict.

Ameritech ignores the evidence supporting its role in the events which led to Ahern's termination from his employment. Ameritech's corporate security investigated Ahern's PVR infraction, which was considered a violation of Ameritech's Code of Business Conduct. Corporate security escorted Ahern from the building after he "retired." Barbara Gerald testified in part as follows when asked why she did not give Ahern a second chance:

"And the other side to that is that, I mean, without question, what I talked about earlier, I have a responsibility as a manager of Ameritech. I sign a Code of Business Conduct that says that I'll safeguard company assets and I take that personally. And this was a violation. I didn't have any choice."

Gerald also stated that knowing that the Chief Executive Officer of Ameritech would receive a report on the incident was a factor in her decision. Gerald's testimony makes clear that she felt she had the duty to safeguard the assets of Ameritech and not just Ameritech Pay Phone Services.

■■ Ameritech next asserts that the trial court erred by not granting its motion for summary judgment on Ahern's age discrimination claim. In *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, the court held at syllabus:

"Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the

motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made."

■ Only when the denial of a summary judgment motion is predicated on a pure issue of law will the decision not be considered harmless and be reviewed by an appellate court. *Wein v. Seaman Corp.* (1996), 116 Ohio App.3d 189, 687 N.E.2d 477; *First Capital Corp. v. G & J Indus., Inc.* (1999), 131 Ohio App.3d 106, 721 N.E.2d 1084. The denial of Ameritech's motion for summary judgment on the issue of age discrimination involved issues of fact. Any error the trial court may have made by denying the motion on this issue was harmless.

■ Ameritech contends that the trial court erroneously denied its motion for directed verdict on Ahern's claim of age discrimination. Ameritech argues that Ahern did not establish a *prima facie* case of age discrimination because Ahern did not prove that he was replaced by an employee younger than forty years of age.

■ The Ohio Supreme Court has held that age discrimination cases brought in state courts should be construed and decided in accordance with the federal guidelines and requirements. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147, 6 OBR 202, 202–203, 451 N.E.2d 807, 808–809. A plaintiff may establish a *prima facie* case of age discrimination by providing either direct evidence of discrimination or by the indirect method by following the standard established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. That analysis requires the plaintiff to demonstrate "(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." *Barker, supra,* at paragraph one of the syllabus. The last requirement of the *McDonnell Douglas* analysis was rejected by the United States Supreme Court in *O'Connor v. Consol. Coin Caterers Corp.* (1996), 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433. The court held the requirement that the plaintiff be replaced by someone under forty years of age was not an element needed to establish a *prima facie* case of age discrimination. A *prima facie* case requires evidence sufficient to create an inference that any employment decision made was based on an illegal discriminatory criterion. A more reliable indicator of age discrimination is that the plaintiff was replaced by a substantially younger employee rather than whether the plaintiff was replaced by someone outside the protected class. *Id.* However, in *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145, the Ohio Supreme Court once more set forth the four-part test articulated in *Barker, supra.*

If there is direct proof of discrimination, a plaintiff must set forth specific facts demonstrating improper activity "by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph one of the syllabus. There must be a link or nexus between the discriminatory statements or conduct and the prohibited act of discrimination to establish a violation of the age discrimination statutes under the direct evidence standard. *Byrnes, supra.* Without direct proof of discrimination, the plaintiff must rely on meeting the test set forth in *Barker.*

Once a plaintiff establishes a *prima facie* case, a presumption of age discrimination is created. The burden of production then shifts to the employer to come forward with evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. If the employer articulates a nondiscriminatory reason, then the employer has successfully rebutted the presumption of discrimination created by the plaintiff's *prima facie* case. *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 263, 661 N.E.2d 796, 805. The plaintiff then must present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752, 755. The plaintiff's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987, 991. The ultimate burden of a plaintiff in an age discrimination action is to prove that he or she was discharged because of age. *Kohmescher, supra.*

Ameritech does not dispute that Ahern met his burden on the first three elements set forth in *Barker* to establish a *prima facie* case of age discrimination. Ameritech focuses its argument on the requirement that the terminated employee be replaced by a person outside the statutorily protected class. Ameritech argues that Ahern was not replaced but that his duties were added to those of the other franchise manager. In *Barker,* the plaintiff's supervisor assumed that employee's duties. The supervisor was older than the plaintiff. Under *Barker,* the replacement entails the substitution of any employee outside the protected class for an employee who is a member of it. The employee need not be newly hired for the position. A replacement for the purposes of *Barker* may occur when the duties and responsibilities of the terminated employee are transferred to another person already employed. *Cruz v. S. Dayton Urological Assoc., Inc.* (1997), 121 Ohio App.3d 655, 700 N.E.2d 675.

The other Cleveland franchise manager, Michael Paradise, assumed Ahern's duties after December 13, 1996. Paradise was less than forty years old at the

time. There had been discussion at Ameritech Pay Phone Services about eliminating one of the franchise manager positions in Cleveland for several years. A few months after Ahern's discharge, Ameritech Pay Phone Services did officially reduce the number of Cleveland franchise managers to one. Enough evidence was admitted at trial to show that Paradise replaced Ahern for the purposes of *Barker*.

Ameritech argues that the replacement employee must be similarly situated to the discharged employee. It is Ameritech's position that Paradise did not violate the PVR plan and, because Ahern did, the replacement was not similarly situated to Ahern. There was evidence presented below that Paradise engaged in the conduct Ahern considered to be offensive, including the giving of neck massages. Further, Ahern testified that he asked Paradise for his keys to a company vehicle in September 1996, well after the PVR plan went into effect. Therefore, there was some evidence that Paradise also was driving a company vehicle, contrary to the dictates of the PVR policy.

Ameritech next argues that Ahern did not rebut the presumption that it had a legitimate, nondiscriminatory reason for discharging him. Ameritech points out that the PVR plan required Ahern to drive his own vehicle or a suitable replacement. Instead, Ahern drove company cars while accepting reimbursement for driving his personal car.

Ahern countered Ameritech's contention by presenting evidence from which the jury could conclude that Ameritech's true reason for firing Ahern was because of his age. Ahern had an unblemished record with Ameritech for thirty-two years before the issue of the PVR violation occurred. There was evidence that other employees received money for mileage which should not have been claimed. Those employees were never disciplined or, apparently, asked to repay Ameritech for the funds they were incorrectly paid. Further, under the PVR plan, an employee would be paid the $165 even if only one mile was driven in a month. The evidence admitted at trial showed that Ahern did use his personal vehicle every month he also drove the company cars. Therefore, Ahern was entitled to be reimbursed for using his personal vehicle. Also, as stated above, there was at least some suggestion that Paradise used a company vehicle but was not disciplined in any fashion by Ameritech Pay Phone Services. There was evidence that Ahern no longer fit in with his younger co-workers once Gerald became the general manager and fostered a more playful environment. When construing this evidence in the light most favorable to the plaintiffs, it is clear that Ahern presented evidence of probative value in support of his claim of age discrimination. The trial court did not err by denying Ameritech's motion for directed verdict on Ahern's age discrimination cause of action.

Ameritech's first and second assignments of error are overruled.

## IV

"III. The trial court committed reversible error by failing to grant summary judgment in favor of this defendant and against the plaintiffs on the plaintiffs' claim of violation of the stock option 'Agreement.'"

 As stated above, this court will not review the denial of a summary judgment motion after a trial was held on the matter.

Ameritech's third assignment of error is overruled.

## V

"IV. The trial court committed reversible error by failing to direct a verdict in favor of this defendant and against the plaintiffs on the plaintiffs' claim of violation of the stock option 'agreement.'"

 In its fourth assignment of error, Ameritech argues that the trial court erred by failing to direct a verdict in its favor on Ahern's claim that Ameritech violated the stock option agreement. Ameritech contends that the agreement stated that the options would expire thirty days after Ahern's employment was terminated for any reason other than cause. Because Ahern is claiming that he was fired because of age discrimination, Ameritech submits that Ahern was not able to exercise the options as a matter of law.

 The agreement in question states that Ahern could exercise the options on or after January 16, 1997, or on January 16 of the next two years. Ahern was dismissed by Ameritech on December 13, 1996, or more than thirty days before the options could have been exercised. Ahern's unlawful termination made it impossible for him to exercise the stock options. Ameritech's argument ignores the evidence of its own misdeeds in this matter. An employer cannot invoke the terms of an agreement that it drafted to prevent an employee who it wrongfully terminated from recovering the benefits of the contract in subsequent litigation.

Ameritech's fourth assignment of error lacks merit.

## VI

"V. The trial court committed reversible error by admitting the testimony of John Burke regarding his 'statistical' opinions, particularly his opinion that 'age was a factor' in employees' being no longer employed *for whatever reason*, at Ameritech." (Emphasis *sic*.)

 In its fifth assignment of error, Ameritech objects to the opinion rendered by Ahern's expert witness, John Burke. Burke stated that age was a factor in why Ameritech employees, salary grade five and up, left Ameritech's

employ. Burke admitted that he did not consider an employee's reason for leaving Ameritech in his analysis. Ameritech argues that Burke's testimony was irrelevant and should have been excluded by the trial court.

 The decision of whether or not to admit evidence rests within the sound discretion of the trial court. *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 715 N.E.2d 546. A trial court's ruling concerning the admissibility of evidence will not be reversed on appeal absent a clear abuse of that discretion which results in material adverse prejudice. *Renfro v. Black* (1990), 52 Ohio St.3d 27, 32, 556 N.E.2d 150, 154–155. Even if a reviewing court would have reached a different conclusion concerning an evidentiary issue, this court will not simply substitute our judgment for that of the trial court. *Id.* To constitute a reversible abuse of discretion, the trial court's ruling "must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.

Ameritech argues that Burke's testimony was based upon facts which were too broadly based because Burke considered all salary grade five and above employees in the entire Ameritech family of companies. Ameritech further states that Burke neglected to consider why the employees left. Ameritech contends that the older employees most likely left for legitimate reasons such as retirement.

At trial, Burke testified that he compared the number of employees under the age of forty who were retained by Ameritech with the number of employees over that age who left the company's employment. For his statistical base, Burke used a list of employees of Ameritech Corporation, Ameritech Services, and related companies who were at salary grade five and above. Burke did not include the reason for the employees' termination. Burke concluded that more employees over the age of forty left Ameritech than under the age of forty. Burke testified, to a reasonable degree of scientific certainty, that the variation was not random but due to cause correlated with age. Burke could not relate the statistics to one person such as Ahern but only to a group of people. Therefore, Burke did not testify that age was a reason in Ahern's termination.

Ameritech's points regarding Burke's testimony were brought out at trial. The jury was aware that Burke did not consider the underlying reasons for the employees leaving Ameritech. Ahern was alleging that Ameritech as a whole engaged in a pattern of discriminating against employees because of age. Therefore, Burke was justified in considering people employed by the Ameritech family of companies and not just Ameritech Services. Ameritech has not

demonstrated prejudice. The trial court did not abuse its discretion by admitting the testimony of Burke.

Ameritech's fifth assignment of error is overruled.

## VII

"VI. The trial court committed reversible error by admitting into evidence material from the deposition of James Goetz in the case of *Williamson v. Ameritech Corporation.*"

In its sixth assignment of error, Ameritech challenges the trial court's admission of the deposition of James Goetz. Goetz was an executive with the Information Technologies Unit of Network Services. Network Services was a part of Ameritech Services. In September 1993, Goetz spoke at a video conference to the Information Technologies Unit. The conference was broadcast to at least three hundred personnel of Informational Technologies in the Cleveland area alone. During the conference, Goetz remarked that Informational Technologies wanted to start bringing in people who were under forty-five years old at entry-level analyst positions. Goetz explained that he meant the organization would be open to hiring people from colleges again. Goetz gave the deposition in relation to another lawsuit.

Ameritech contends that the remarks were too remote in time to have been admissible under *Byrnes, supra.* To support a claim of age discrimination under the direct evidence standard, the plaintiff must show a causal connection or link between an employer's discriminatory remarks or statements and the discrimination against that employee to establish a violation. In the instant case, Ahern supported his age discrimination claim by presenting evidence to prove his case by the indirect evidence standard. Therefore, Ahern need not show the causal connection between the remark and Ameritech's discriminatory conduct.

Ameritech next asserts that the statement by Goetz was inadmissible hearsay. Ahern counters by contending that the remark was an admission by a party-opponent under Evid.R. 801(D)(2). This rule of evidence provides statements are not hearsay when "[t]he statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."

In his deposition, Goetz stated that he was a vice-president of Information Technology and was employed by Ameritech Services. Ameritech Services also employed Ahern. The statement was made by Goetz, who was a high-ranking executive of Ameritech Services. The statement was an admission by a party-opponent and not hearsay. Because the remark was not hearsay, the other evidence rules governing hearsay are not applicable.

Ameritech also argues that the deposition was inadmissible under Civ.R. 32(A) because there is no proof that any of the defendants in the instant case were available to cross-examine Goetz. The caption of the case at issue shows that Ameritech Corporation is listed as a defendant and that the defendants were represented at the hearing. Civ.R. 32(A) was not violated. Further, Evid.R. 1002 does not apply. Goetz was being questioned about what he said during the video conference. Ahern did not attempt to admit a portion of the conference into evidence. Goetz's deposition regarding the conference was admitted.

Ameritech's sixth assignment of error lacks merit.

## VIII

"VII. The trial court committed reversible error by allowing testimony as to Mr. Ahern's 'honesty.' "

In its seventh assignment of error, Ameritech submits that the trial court abused its discretion by admitting the testimony of Frank Jenuleson that he had no reason to doubt Ahern's honesty. Jenuleson had been Ahern's supervisor before Gerald. Evid.R. 608(A) provides that the credibility of a witness may be supported by the giving of an opinion of the witness's character for truthfulness after the witness's character for truthfulness has been attacked by opinion or reputation evidence or otherwise. The stated reason for Ahern's termination was his violation of the PVR policy because he accepted reimbursement payment while driving a company vehicle. This connotes that Ameritech did not consider Ahern to be honest. The trial court did not abuse its discretion by admitting this evidence.

Ameritech's seventh assignment of error is overruled.

## IX

"VIII. The trial court committed reversible error by instructing the jury on punitive damages."

In its eighth assignment of error, Ameritech challenges the propriety of the trial court instructing the jury on punitive damages. Ameritech argues that no evidence of actual malice supporting an award of punitive damages was

adduced at the trial below. Ameritech also disputes that there was any evidence it participated in the decision to terminate Ahern's employment with Ameritech Pay Phone Services.

A charge to the jury should be a plain and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171. The standard of review applied by an appellate court is that of abuse of discretion. *Prejean v. Euclid Bd. of Edn.* (1997), 119 Ohio App.3d 793, 696 N.E.2d 606. The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id.*

Punitive damages are awarded for the purpose of punishing the defendant for wrongful conduct and deterring such conduct in the future. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 660, 590 N.E.2d 737, 740–741. Punitive damages may be awarded upon a finding of actual malice. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 704 N.E.2d 1217. "Actual malice" is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Misconduct greater than negligence is required for an award of punitive damages. *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416, syllabus.

Ameritech ignores evidence of its involvement in the decision to discharge Ahern. Gerald testified that, immediately upon learning that Ahern was driving company vehicles, she contacted corporate security to conduct an investigation of the matter. Not only did corporate security investigate Ahern's PVR infraction, they were the ones who primarily conducted the interview with Ahern that resulted in his dismissal. Corporate security escorted Ahern from the premises. Further, the stated reason for Ahern's termination was his violation of Ameritech's Code of Business Conduct. A report of the incident would be given to the Chief Executive Officer of Ameritech. There also was evidence that Ameritech as a whole constantly engaged in downsizing. Ahern argued that the desire to eliminate one of the franchise manager positions in Cleveland was a factor in his dismissal. His termination allowed Ameritech to retain the younger manager who fit into the casual atmosphere encouraged by Gerald.

There was enough evidence showing Ameritech's actual malice admitted at trial to justify the trial court's instruction. No abuse of discretion occurred by the trial court's decision to so instruct the jury.

Ameritech's eighth assignment of error is overruled.

## X

"IX. The trial court committed reversible error by awarding pre–judgment interest."

In its ninth assignment of error, Ameritech contends that the trial court abused its discretion by awarding the Aherns prejudgment interest. Ameritech argues that it had a good faith, objective belief that it had no liability in this case, precluding an award of prejudgment interest. Ameritech again argues that Ahern was not in its employ at the time of his discharge and that it did not participate in the decision to terminate Ahern from his position with Ameritech Pay Phone Services.

At the time Ahern filed his complaint, R.C. 1343.03(C) provided:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The determination to award prejudgment interest rests within the trial court's sound discretion. *Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse* (1996), 74 Ohio St.3d 474, 479, 659 N.E.2d 1268, 1273–1274. Absent a clear abuse of that discretion, the trial court's decision should not be reversed upon appeal. *Tummino v. Gerber* (1997), 121 Ohio App.3d 518, 700 N.E.2d 382.

In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, the court held at the syllabus:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

 A party possessing a good faith, objectively reasonable belief that it has no liability need not make a settlement offer. The determination of what constitutes a "lack of good faith" is left to the trial court's discretion. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331.

The Aherns attached pretrial letters regarding settlement to their motion for prejudgment interest. In the letters, Ameritech's attorney acknowledged the plaintiffs' settlement demand of $750,000 but stated that the defendants refused to make more than a nuisance offer of $5,000 because they thought there was no admissible evidence of liability. Ameritech stated that it did not employ Ahern, have a say in his dismissal, or discriminate against him because of his age.

Ameritech again raises the argument that it did not employ Ahern as a complete defense to any liability. There was evidence admitted below showing that the "Ameritech family of companies" is an integrated system. Witnesses routinely identified themselves as Ameritech employees; witnesses who were employed by the Ameritech family of companies related work histories on the stand in which they easily moved from one of these companies to another; the Code of Business Conduct that figured prominently in the case was drafted by Ameritech; Ameritech's security investigated the incident and escorted Ahern from the building; a report of the incident was sent to the head of Ameritech; Gerald stated she was obligated to protect the corporation's assets; Ahern received the stock option agreement from Ameritech; and Ameritech routinely engaged in downsizing to save money. Ameritech was aware of all these facts before trial yet failed to make any real offer to settle the case. The trial court did not abuse its discretion by awarding prejudgment interest.

Ameritech's ninth assignment of error is not well taken.

## XI

"X. The trial court committed reversible error by entering judgment in a separate amount for the value of stock options when there was no separate verdict in that amount and there was a general verdict for compensatory damages."

 In its tenth assignment of error, Ameritech challenges the trial court's entering judgment against it for the value of the stock options. Ameritech argues that the jury returned a general verdict for compensatory damages against it on Ahern's age discrimination claim but that there was no separate verdict on the stock options. Ameritech maintains that the trial court had no basis to add the amount of $86,112 for the stock options in addition to the general verdict.

The plaintiffs filed a motion to reduce the jury award to judgment. The Aherns included the amount for the stock options in that motion. Ameritech's reply to the motion merely argued that punitive damages should be limited in the case. No mention was made of the amount for the stock options.

 It is well settled that an appellate court will not consider any alleged error that a party could have, but did not, bring to the attention of a trial court. A party waives the right to appeal an issue that was not raised at the appropriate time below. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1993), 91 Ohio App.3d 76, 631 N.E.2d 1068. The matter will be deemed waived in the absence of plain error.

██ "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." (Citations omitted.) *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

The jury answered the second interrogatory, which stated:

"If and only if you have entered a general verdict in favor of the plaintiffs on the claims of age discrimination or retaliatory firing for opposing sexual harassment, answer this question. What amount if any do you award Bryan Ahern as the present value of the stock options?"

The jury did return a general verdict in the Aherns' favor on the claim of age discrimination. The language of the interrogatory adds an award of the value of the stock options to any general verdict on that claim to the Aherns. No plain error exists in the trial court's act of reducing this interrogatory response to judgment.

Ameritech's tenth assignment of error lacks merit.

Judgment in appellate case number 75809 is affirmed.

## XII

In appellate case number 75808, Barbara Gerald appeals from the jury's award of $10,000 on Ahern's claim of age discrimination and the assessment of $18,000 in punitive damages. Gerald also disputes the trial court's award of prejudgment interest. For the reasons set forth below, the verdict against Gerald is affirmed.

"I. The trial court committed reversible error when it failed to grant Ms. Gerald's motion for summary judgment on the age discrimination claim.

"II. The trial court committed reversible error when it failed to grant Ms. Gerald's motions for directed verdict at the close of plaintiff's case–in–chief and at the conclusion of all the evidence on the age discrimination claim."

Gerald's first and second assignments of error will be addressed together, as Gerald has not separately briefed the errors in contravention of App.R. 16(A). Gerald's first assignment of error regarding the denial of her summary judgment motion on Ahern's age discrimination claim is overruled for the reasons set forth in Ameritech's first assignment of error.

Gerald next contends that Ahern did not make out a *prima facie* case of age discrimination. Gerald presents the identical argument as did Ameritech regarding the fourth prong of the *Barker* test. As stated above, this court finds that Ahern did indeed present sufficient evidence on this issue to survive a motion for directed verdict.

Next Gerald asserts that she had a legitimate, nondiscriminatory reason for terminating Ahern's employment with Ameritech Pay Phone Services. Gerald argues that Ahern's violation of the PVR plan justified his dismissal. Again, this court already has determined that Ahern presented evidence showing that the real reason for his termination was his age and not any violation of Ameritech's Code of Business Conduct.

 Gerald argues that the statute of limitations had run when Ahern named her as a party-defendant in his second amended complaint. Gerald states that Ahern's cause of action for age discrimination fell under R.C. 4112.14, which she contends is subject to a one-hundred-eighty-day statute of limitations. Gerald maintains that Ahern's age discrimination claim against her was time-barred.

In *Leonardi v. Lawrence Industries, Inc.* (Sept. 4, 1997), Cuyahoga App. No. 72313, unreported, 1997 WL 547825, this court held that the statute of limitations for R.C. 4112.14 was six years. Ahern's claim of age discrimination did not fall outside the term allowed by the statute of limitations.

Gerald's first and second assignments of error are overruled.

## XIII

"III. The trial court committed reversible error when it admitted the testimony of John Burke regarding his 'statistical' conclusions and, in particular, his conclusion that 'age was a factor' in employees' being no longer employed for whatever reason, at 'Ameritech.' "

"IV. The trial court committed reversible error when it admitted into evidence a hearsay and otherwise inadmissible excerpt from the deposition of James Goetz in the case of *Williamson v. Ameritech Corporation.*"

In these two assignments of error, Gerald raises the same arguments already addressed in Ameritech's fifth and sixth assignments of error. For the reasons set forth *supra*, Gerald's third and forth assignments of error are overruled.

## XIV

"V. The trial court committed reversible error when it instructed the jury on punitive damages."

In her fifth assignment of error, Gerald asserts that the trial court abused its discretion by instructing the jury on the issue of punitive damages. The law has been set forth already in Ameritech's appeal. Evidence adduced at trial showed that once Gerald became a general manager at Ameritech Pay Phone Services, she fostered an environment in which the younger employees engaged in behavior which was inappropriate in a business setting. The joking and physical contact primarily occurred during after-work gatherings but also were a part of the meetings of Gerald's group at work. There was evidence that Ahern felt extremely uncomfortable within this group after Gerald became his supervisor. Ahern's employment with Ameritech Pay Phone Services lasted only a matter of months after Gerald took over. Testimony at trial indicated that the other franchise manager, Michael Paradise, readily joined in the horseplay. Paradise, in his late thirties at the time, was retained while Ahern was terminat-.ed. Ahern testified that he borrowed keys to a company vehicle from Paradise in September 1996, yet Gerald never indicated that she had questioned Paradise regarding his use of a company vehicle.

There was evidence adduced at trial supporting the trial court's decision to instruct the jury on punitive damages. The trial court did not abuse its discretion by charging the jury on this issue.

Gerald's fifth assignment of error lacks merit.

## XV

"VI. The trial court committed reversible error when it granted plaintiffs' motion for pre–judgment interest."

In her sixth assignment of error, Gerald asserts that· the trial court abused its discretion by awarding prejudgment interest to the plaintiffs. Like Ameritech, Gerald contends that she had an objective good faith, reasonable belief that she was not liable. Gerald again argues that she fired Ahern for violating Ameritech's Code of Business Conduct. Gerald ignores evidence that her stated reason for dismissing Ahern was a subterfuge for discriminating against him because of his age. Witnesses described the joking and physical

contact that took place under Gerald's guidance, primarily by the younger employees. It was clear Ahern did not fit into this atmosphere. Both Krol and Gerald testified that it ultimately was her decision to fire Ahern. Ahern's removal permitted Gerald to retain the younger franchise manager who did fit in with Gerald's style of management. There was no abuse of discretion by the trial court in awarding prejudgment interest in the instant case.

Gerald's sixth assignment of error is overruled.

Judgment affirmed in appellate case number 75808.

Case Nos. 75808 and 75809 are affirmed; Case No. 75807 is remanded for further proceedings consistent with this Journal Entry and Opinion.

*Judgment accordingly.*

TIMOTHY E. MCMONAGLE, P.J., and KILBANE, J., concur.