STRAUSBAUGH, Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee.

[Cite as *Strausbaugh v. Ohio Dept. of Transp.*, 150 Ohio App.3d 438, 2002-Ohio-6627.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–03.

Decided Dec. 5, 2002.

Barry A. Mentser, for appellant.

Betty D. Montgomery, Attorney General, and Larry Y. Chan, Assistant Attorney General, for appellee.

HARSHA, Judge.

{¶ 1} Appellant, Beemon Strausbaugh, appeals from the judgment of the Ohio Court of Claims in favor of appellee, the Ohio Department of Transportation ("ODOT") following a bench trial on his complaint, which asserts causes of action for sexual harassment, intentional infliction of emotional distress, negligent supervision and tortious violation of public policy.[1]

{¶ 2} During the summer of 1999, Strausbaugh worked at ODOT as a Highway Maintenance Worker 2, assigned to the Ross County maintenance facility. Paul Corcoran was his direct supervisor. Corcoran and Strausbaugh had worked together since 1991, and enjoyed what both described as a good working relationship originally. The relationship soured in July and August

---

1. This appeal concerns only the claims of intentional infliction of emotional distress and tortious violation of public policy.

when, according to the complaint, the supervisor began to swear at Strausbaugh on a regular basis, call him derisive names, and direct sexually suggestive gestures toward him. Strausbaugh averred that Corcoran blew kisses at him and touched him in an offensive manner by patting him on the buttocks, and by pulling his head toward Corcoran's crotch to simulate a sexual act. Strausbaugh alleged that he found the conduct to be abusive and offensive, and that Corcoran continued the pattern in spite of repeated requests for him to refrain. As the result of Corcoran's actions, which Strausbaugh alleged were done maliciously, in bad faith, and/or wantonly and recklessly, Strausbaugh claimed that he was entitled to damages for severe emotional distress, mental anguish, humiliation, embarrassment, and loss of income.

{¶ 3} ODOT answered the complaint, admitting the nature of the employment relationship but denying all other material allegations and setting forth affirmative defenses. As part of the pretrial proceedings, the Court of Claims held an evidentiary hearing to determine whether Corcoran's alleged "conduct was manifestly outside the scope of his employment or official responsibilities," or if he "acted with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2743.02(F).[2] The court decided:

{¶ 4} "Based upon the totality of the evidence presented at the hearing, the court finds that Paul Corcoran acted within the scope of his employment with defendant at all times and during all interactions regarding plaintiff that are at issue in this case. The court further finds that Paul Corcoran did not act with malicious purpose, in bad faith, or in a wanton or reckless manner toward plaintiff. Consequently, Paul Corcoran is entitled to personal immunity pursuant to R.C. 9.86 and the courts of common pleas do not have jurisdiction over civil actions against him based upon his alleged actions and inactions in this case." (June 14, 2000 Decision, at 2.)

{¶ 5} The trial court entered judgment reflecting its preliminary decision, and made the express determination, pursuant to Civ.R. 54(B), that "there is no just reason for delay." (June 14, 2000 Judgment Entry.) Strausbaugh did not appeal from the personal immunity judgment. After the court denied a motion by

---

2. "If the Court of Claims determines that the employee was acting within the scope of employment, in furtherance of the interests of the state, the state has agreed to accept responsibility for the employee's acts. R.C. 9.86 and 2743.02(A). In that event, only the state is subject to suit, and the litigation must be pursued in the Court of Claims. If the Court of Claims determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept responsibility for the employee's acts and the employee is personally answerable for his acts in a court of common pleas." *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 287, 595 N.E.2d 862.

ODOT for summary judgment, it bifurcated the trial into the issues of liability and damages, and proceeded accordingly.

{¶ 6} The parties stipulated to the admission of the immunity hearing transcript and exhibits for the trial on liability. That transcript indicated that the workplace environment could be described as being "vulgar," or, as the trial court noted, " 'rough,' at best." After the joint exhibit was admitted, Strausbaugh rested, relying on the transcript and other evidence that he submitted with his memorandum opposing ODOT's motion for summary judgment. ODOT called four witnesses, including Strausbaugh as on cross-examination, Corcoran, and two department supervisors, then rested its defense. There was no rebuttal testimony.

{¶ 7} The trial court rendered a decision that found that Strausbaugh and Corcoran had engaged in "verbal altercations where obscene language was used." It found that the situation changed from a joking fashion to one tinged with anger. It also concluded that Corcoran blew kisses to Strausbaugh and, on two occasions, patted him on the buttocks. Nonetheless, the court determined that Corcoran's conduct was commonplace harassment rather than sexual harassment and that it did not amount to intentional infliction of emotion distress. (Nov. 21, 2001 Decision, at 8.) The court also found for ODOT on the negligent supervision claim. Without mentioning the public policy tort claim, the court concluded, "Plaintiff has failed to satisfy his burden of proof on any of the claims alleged in his complaint." (Nov. 21, 2001 Decision, at 8.) The court journalized a judgment in favor of ODOT.

{¶ 8} Strausbaugh presents two assignments of error for our consideration:

{¶ 9} "ASSIGNMENT OF ERROR 1

{¶ 10} "The trial court erred in granting judgment to appellee on appellant's claim for intentional infliction of emotional distress.

{¶ 11} "ASSIGNMENT OF ERROR 2

{¶ 12} "The trial court erred in failing to render judgment for appellant on his claim for public policy tort."

{¶ 13} Strausbaugh argues in support of his first assignment of error that the trial court applied an incorrect legal standard in granting judgment to ODOT on his claim for intentional infliction of emotional distress. He contends that the court erred when it considered his own conduct toward others as a factor in deciding the claim. He also asserts that the court incorrectly applied the concept of "community" as incorporating the context of his specific working environment. Finally, Strausbaugh suggests that the court's finding of no liability was the product of its either having imposed nonexistent comparative harassment or assumption of the risk standards, or having applied an unrecognized defense that

Corcoran's conduct was welcomed or otherwise condoned by Strausbaugh. These arguments present us with questions of law, which we review on a de novo basis.

{¶ 14} During oral argument of this appeal, ODOT suggested for the first time that Strausbaugh was precluded by his failure to appeal the immunity decision from relitigating issues that relate to his supervisor's intent and conduct. We disagree for two reasons. First, the record clearly reveals that ODOT did not offer the preclusion argument at the trial level, either in its motion for summary judgment or at trial. The Court of Claims found that genuine issues of fact remained to be litigated as to all elements of Strausbaugh's claims and overruled ODOT's motion for summary judgment. Furthermore, ODOT stipulated to the admission of the immunity hearing transcript as evidence for the purpose of the trial on the issue of liability. ODOT, thus, acquiesced in the court's consideration of the same testimony and exhibits in deciding the claims on the merits. We are mindful of language from this court's decision in *Gudin v. W. Res. Psychiatric Hosp.* (June 14, 2001), Franklin App. No. 00AP–912, 2001 WL 664389, that arguably supports ODOT's position that Strausbaugh should have been precluded from reoffering proof as to Corcoran's intent and conduct; however, we do not view that language to be controlling here where the parties obviously consented to the trial court's deciding issues related to Corcoran's conduct based upon resubmitted testimony. Moreover, reviewing courts do not generally consider questions that were not raised at the trial level, *State ex rel. Porter v. Cleveland Dept. of Pub. Safety* (1998), 84 Ohio St.3d 258, 259, 703 N.E.2d 308, citing *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706; but, rather, may deem such issues as waived on appeal. *Stuller v. Price* (Sept. 20, 2001), Franklin App. No. 00AP–1355, 2001 WL 1098028. Thus, ODOT's suggestion that Strausbaugh should have been precluded from attempting to prove that Corcoran intended to cause serious emotional distress or that his conduct was extreme and outrageous is not an issue that we will consider for the first time here. Second, the standards for determining liability under respondeat superior (i.e., if Corcoran intended to cause Strausbaugh to suffer serious emotional distress or if his conduct was so extreme and outrageous that it exceeded the bounds of decency), differ from the statutory standards for determining immunity (i.e., if he went beyond the scope of his employment by acting maliciously, in bad faith, or in a wanton or reckless fashion toward Strausbaugh). See *Dodge v. United States of Am.* (S.D.Ohio 2001), 162 F.Supp.2d 873, 884 ("Ohio courts have stated that supervisors may act within the scope of their employment, thus subjecting their employer to respondeat superior liability, when they engage in sexually harassing behavior toward a subordinate employee.").

{¶ 15} Intentional infliction of emotional distress was first recognized as a separate claim for relief by the Ohio Supreme Court in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, where the court stated, at the syllabus: "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To establish his claim, Strausbaugh needed to show (1) that Corcoran either intended to cause serious emotional distress or knew or should have known that his actions would result in serious emotional distress to Strausbaugh; (2) that Corcoran's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; (3) that Corcoran's actions were the proximate cause of Strausbaugh's psychic injury; and (4) that Strausbaugh's mental anguish was serious and of a nature that no reasonable person could be expected to endure it. *Cochran v. Columbia Gas of Ohio, Inc.* (2000), 138 Ohio App.3d 888, 896, 742 N.E.2d 734, citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 463 N.E.2d 98; and *Oglesby v. Columbus,* Franklin App. No. 01AP–1289, 2002-Ohio-3784, 2002 WL 1726033, at ¶ 10, quoting *Irvine v. Akron Beacon Journal,* Summit App. No. 20804, 2002-Ohio-3191, 2002 WL 1371184, at ¶ 48–51. We emphasize that major outrage is essential to the tort, and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. See *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 382, 731 N.E.2d 216, quoting *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 240, 31 OBR 520, 511 N.E.2d 403. Only conduct that is truly outrageous, intolerable, and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying, and insulting behavior. *Petrarca v. Phar-Mor, Inc.* (2001), Trumbull App. No. 2000–T–0121, 2001 WL 1117015. Insults, foul language, hostile tempers, and even threats must sometimes be tolerated in our rough-and-tumble society. *Breitenstein v. Moraine* (Nov. 5, 1992), Montgomery App. No. 13375, 1992 WL 317444. See, also, *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 6, 771 N.E.2d 874, quoting *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 451 N.E.2d 759. See, also, *Risch v. Friendly's Ice Cream Corp.* (1999), 136 Ohio App.3d 109, 115, 736 N.E.2d 30.

{¶ 16} Strausbaugh's argument requires us to address two questions of law: (1) In determining whether a defendant's conduct is sufficiently extreme and outrageous, may a factfinder consider the context or environment in which the acts occur? (2) If so, may the factfinder also consider the plaintiff's role in creating or participating in that environment? Because we answer both questions in the affirmative, we see no prejudicial error in the Court of Claims' analysis.

{¶ 17} When it rendered its decision, the trial court recited the requisites of proof set forth in *Pyle* and restated in *Cochran, Oglesby,* and *Irvine;* then it described the standard it used to determine that Strausbaugh did not prove Corcoran's conduct to be extreme and outrageous. In doing so, the court quoted from *Yeager:*

{¶ 18} " '* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

{¶ 19} " '* * * The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. * * *' "

{¶ 20} Applying this standard to the facts of this case, the court explained:

{¶ 21} " '* * * [T]he type of language commonly used in the district nine garage is 'rough' at best. Similarly, the conduct of the employees, including plaintiff, was more than occasionally 'inconsiderate and unkind.' It is within this 'community' that the court must judge whether Corcoran's words and actions were 'extreme and outrageous.' In this particular working environment it cannot be said that plaintiff was forced to endure more than mere insults and indignities. Thus, plaintiff has failed to prove this critical element of his claim for emotional distress." (Nov. 21, 2001 Decision, at 7.)

{¶ 22} In a nutshell, Strausbaugh's argument contends that the trial court misconstrued the meaning of "community" by focusing upon the workplace environment and considering what effect his own conduct had upon creating it. In one sense we agree. The term "community" is broader than the workplace. It is meant to convey a more inclusive cross-section of society. Yet we do not believe the trial court's consideration of appellant's conduct constituted error. In determining whether the community would be shocked by certain conduct, it is appropriate to consider its context. What the community deems outrageous at a funeral or church service might be deemed merely an annoyance or an indignity at a social gathering. Strausbaugh would restrict the analysis solely to Corcoran's conduct to determine whether it was extreme and outrageous. This approach is both unrealistic and unsupported by the Restatement position that *Yeager* adopted. As the Restatement of the Law 2d, Torts (1965), Section 46.9(g), recognizes, there are situations where the acts of the plaintiff minimize or remove the element of outrage. One such circumstance is extreme provocation. Id. That is precisely the situation here. Strausbaugh contributed to, if not created, the crude, abusive environment about which he now complains. He was

a prime player in using foul language and crude gestures. Several witnesses at the immunity hearing testified that Strausbaugh was the chief architect in creating a crude and vulgar workplace. They testified that he would commonly grab his crotch and make comments such as "I've got something for you to suck on"; "I got your lunch right here, big boy"; "You want some of this?" These witnesses also indicated that Strausbaugh commonly used foul language, including the "F" word. In fact, "fuck" was described as being his favorite word. One witness relayed an occasion where his coworkers bet Strausbaugh that he could not go all day without saying it. They were right. These witnesses indicated that Strausbaugh's offensive conduct was often aimed at Corcoran and that he called his supervisor a "dickhead," flipped him "the bird," and told him "fuck you" in response to orders. A female coworker relayed an incident where Strausbaugh referred to black males as reportedly having "big ones," then grabbed his crotch and said he had a "big one, too."

{¶ 23} In terms of the atmosphere in general, one comment is particularly insightful. When asked to describe a situation where employees made sexual references to coworkers who were bent over, one witness stated:

{¶ 24} "Well, there's so many circumstances of that it's hard to describe just one, but I've done that myself. Someone might be bent over and you walk up and make a comment like, 'Hey, while you're down there, you know, you want to do me a favor * * *,' and things like that daily." (Exhibit 1, Tr. at 213–214.) While vulgarity toward an individual is not excusable *solely* because it is commonplace, as a leading purveyor of vulgarity appellant helped to create the situation about which he now complains. As the Restatement indicates, the acts of the plaintiff may minimize or remove the element of outrage. Restatement of the Law 2d, Torts (1965), Section 46.9(g).

{¶ 25} The Court of Claims properly considered both the context in which Corcoran's conduct occurred and Strausbaugh's part in creating that environment, in determining whether Corcoran's conduct was extreme and outrageous. Much as equity demands that a plaintiff must come to the chancellor with clean hands, the law may properly inquire into Strausbaugh's own conduct in this context. While the Court of Claims may have slightly misconstrued the concept of community, it did not err, considering the context within which the offending conduct occurred. Any error in this regard was harmless. See Civ.R. 61.

{¶ 26} Strausbaugh also criticizes the trial court's reliance upon *Yeager*, and argues that the decision is based on "the outdated language of the Restatement." He urges that "more recent, better reasoned decisions" by the First District Court of Appeals in *Meyers v. Hot Bagels Factory, Inc.* (1999), 131 Ohio App.3d 82, 721 N.E.2d 1068, and by the Second District Court of Appeals in *Garrison* require a conclusion that Corcoran's conduct was extreme and outrageous. Yet

both of those courts cited *Yeager* with approval and used a contextual analysis in their review.

{¶ 27} *Meyers,* which involved a customer who was verbally attacked by a store owner, recognized that conduct must be viewed in context to determine whether it is culpable conduct, because " '[t]here are situations naturally fraught with antagonism and emotion where a person must be expected to endure the resultant antagonism and mental anguish.' " *Meyers,* 131 Ohio App.3d at 94, 721 N.E.2d 1068, quoting *Stepien v. Franklin* (1988), 39 Ohio App.3d 47, 51, 528 N.E.2d 1324. See, also, *Local Lodge 1297 v. Allen* (1986), 22 Ohio St.3d 228, 490 N.E.2d 865. *Meyers* noted that Ohio has adopted Restatement of the Law 2d, Torts (1965), Section 46.

{¶ 28} *Garrison* arose in a public employment context, as did this case. In reviewing a denial of summary judgment and immunity, the court commented that "[t]he resolution of these kinds of cases is fact-intensive and often depends on distinctions between conduct that seems outrageous and conduct that is undesirable, but not quite offensive enough to be called outrageous." *Garrison* at 379, 731 N.E.2d 216. Its "fact intensive" analysis led the court to conclude that those issues should be resolved by the ultimate trier of the facts, the jury in that case. But, more importantly, the court considered Garrison's own conduct, observing that he had been a competent employee with few discipline problems who had shown no evidence of aggression in five years of service. The court concluded: "Compared to acts found 'outrageous' in other cases, the defendants' acts * * * would be outrageous *if Garrison did nothing to warrant such treatment.*" (Emphasis added.) 134 Ohio App.3d at 381, 731 N.E.2d 216.

{¶ 29} A comparison of the decision by the Court of Claims with the decisions in *Meyers* and *Garrison* leads us to conclude that each of these courts undertook a similar analysis. The Court of Claims correctly applied controlling legal principles to the evidence before it and simply came to a different result than *Meyers* and *Garrison* based upon the facts. The court borrowed certain phrases like "rough," "inconsiderate and unkind," and "community" from *Yeager* in its effort to articulate the basis of its conclusion, but it did not create a new legal standard. We do not view the trial court's choice of words or its explanation as reflecting that it applied any new or inappropriate standard. The trial court's analysis does not manifest a prejudicial misapplication of the law. Strausbaugh's first assignment of error is overruled.

{¶ 30} We look now to the second assignment of error, which involves Strausbaugh's public policy tort claim. The trial court decision does not expressly address that claim or state reasons for its ruling that appellant failed to prove it. The parties concurred during oral argument, however, that the Court of Claims did issue a final judgment denying liability on that theory. After

reviewing the court's decision, we agree because it expressly states that "plaintiff has failed to satisfy his burden of proof on any of the claims alleged in his complaint." Thus, we have jurisdiction to review this appeal as the Court of Claims' decision and judgment are final and appealable.

{¶ 31} Strausbaugh argues that proof offered at trial established a compensable claim and that the court's judgment was contrary to the weight of the evidence. During oral argument, ODOT raised issue preclusion as a basis for overruling the second assignment of error. For the reasons we fully explained in rejecting the preclusion argument in deciding the first assignment of error, we reject it here also. ODOT additionally argues that, because the evidence at trial showed Strausbaugh to be a union member whose employment is subject to a collective bargaining agreement, he was not an at-will employee and cannot recover on a public policy tort theory. In one sense we agree with appellee; however, we again reject the state's contention that the mere existence of a collective bargaining agreement preempts a common-law tort remedy.

{¶ 32} In *Gudin*, we addressed whether the existence of a collective bargaining agreement preempts the claims of workers subject to the agreement. We followed the reasoning of the United States Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.* (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, where the court analyzed similar federal preemption issues. We concluded:

{¶ 33} "* * * [S]tate-law claims are preempted in two situations: (1) if the state claim is founded on rights created by collective bargaining agreements; or (2) if the rights are created by state law but the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement. * * *" *Gudin* at 9, citing *Sinea v. Denman Tire Corp.* (1999), 135 Ohio App.3d 44, 62, 732 N.E.2d 1033; and *Street v. Gerstenslager Co.* (1995), 103 Ohio App.3d 156, 160, 658 N.E.2d 1105.

{¶ 34} We noted, however, that " ' "not every dispute * * * tangentially involving a provision of a collective-bargaining agreement, is pre-empted." ' " *Gudin*, at 8, quoting *Lingle*, at 413, 108 S.Ct. 1877, 100 L.Ed.2d 410, fn. 12. While "claims predicated on allegedly wrongful acts directly related to the terms and conditions of a plaintiff's employment are generally preempted by the collective bargaining agreement," if a "claim is premised upon personally abusive conduct by the employer and its supervisors (or conduct that is not arguably sanctioned by the labor contract), the * * * claim is not preempted. See, e.g., *Lightning v. Roadway Express, Inc.* (C.A.11, 1995), 60 F.3d 1551, 1556–1557 (employee's IIED claim based upon verbal abuse by supervisors and co-workers not preempted)." Id. at 10–11. Here, Strausbaugh's public policy tort claim is

premised entirely on the allegedly abusive conduct of his supervisor. Therefore, the claim is not preempted.

{¶ 35} But *Gudin* involved an action for intentional infliction of emotional distress, *not* one for discharge in violation of public policy under *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny. *Greeley*'s claims are limited to employee-at-will situations that involve discharge or disciplinary action. Here, Strausbaugh neither pled nor proved that he was an employee at will or that he received any form of discipline or was discharged. In *Greeley* at paragraph one of the syllabus, the court held that "[p]ublic policy warrants an exception to the *employment-at-will doctrine* when an employee is *discharged or disciplined* for a reason which is prohibited by statute." (Emphasis added.) In *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, at paragraph three of the syllabus, the court extended the foundation supporting viable claims for relief beyond statutory pronouncements to include clear expressions of policy evident from other sources, such as constitutions, administrative rules, and the common law. The court later held, in *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653, syllabus, that "a cause of action may be brought for wrongful discharge in violation of public policy based on sexual harassment/discrimination."

{¶ 36} But to establish a claim for tortious violation of public policy, Strausbaugh had to plead and prove that he was an employee at will. See *Stephenson v. Yellow Freight Sys., Inc.* (Oct. 26, 1999), Franklin App. No. 99AP–77, 1999 WL 969817, citing *Haynes v. Zoological Soc. of Cincinnati* (1995), 73 Ohio St.3d 254, 652 N.E.2d 948, syllabus. He failed to do so. The evidence indicates that he was subject to a collective bargaining agreement between his union and ODOT. Thus, he is not an at-will employee.

{¶ 37} Moreover, Strausbaugh did not allege or prove that he was discharged or otherwise disciplined in violation of public policy. In fact, the record is devoid of any evidence to this effect. Instead, the essence of his claim was that he was mistreated or harassed in violation of public policy. "Neither Greeley nor its progeny have recognized a tort for harassment in violation of public policy." *Bell v. Cuyahoga Community College* (1998), 129 Ohio App.3d 461, 465, 717 N.E.2d 1189. In *Hillman v. Safeco Ins. Co. of Am.* (N.D.Ohio 2002), 190 F.Supp.2d 1029, the plaintiff's inability to prove that he was either actually or constructively discharged defeated his claim for wrongful discharge as the result of alleged age discrimination. As observed by the court in *Evans v. Toys R Us–Ohio, Inc.* (S.D.Ohio 1999), 32 F.Supp.2d 974, "A review of relevant case law shows that the public policy tort has not been extended to claims for failure to promote or retaliation." Id. at 990, citing *Bell.* In *Bools v. Gen. Elec. Co.* (S.D.Ohio 1999), 70 F.Supp.2d 829, 832, the court stated: "Our research indicates that Ohio appellate

courts seem hesitant about expanding the exception [to] the doctrine of employment-at-will beyond claims for wrongful termination."

██ {¶ 38} "[I]n Ohio, the Supreme Court or the General Assembly creates new causes of action." *Silverman v. Am. Income Life Ins. Co. of Indianapolis, Inc.* (Dec. 18, 2001), Franklin App. No. 01AP–338, 2001 WL 1607635. This court is not inclined to create or recognize a cause of action for harassment in violation of public policy based upon these facts.

{¶ 39} The trial court did not err by entering judgment in favor of ODOT on Strausbaugh's public policy tort claim. Because Strausbaugh failed to prove he was an at-will employee or that he was discharged or disciplined in violation of public policy, the judgment was not contrary to the weight of the evidence. Strausbaugh's second assignment of is overruled.

{¶ 40} Having overruled appellant's assignments of error, we affirm the judgment of the Ohio Court of Claims.

Judgment affirmed.

LAZARUS and BROWN, JJ., concur.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting by assignment.